1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JAMES BOWELL,                          No.  2:17-cv-0981 KJM KJN P

12                    Plaintiff,

13          v.

14   CALIFORNIA DEPARTMENT OF               ORDER AND FINDINGS AND
     CORRECTIONS, et al.,                   RECOMMENDATIONS
15
                     Defendants.
16

17          Plaintiff is a state prisoner, who proceeds without counsel and in forma pauperis, in this

18   civil rights action filed pursuant to 42 U.S.C. § 1983.  This case proceeds on the first amended

19   complaint, against defendants K. Allison and J. Lewis.[1]  Presently pending are defendants'

20   motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), and motion to strike plaintiff's

21   unauthorized filings, and request for judicial notice.  For the reasons that follow, the undersigned

22   grants the motion to strike and the request for judicial notice, and recommends that defendants be

23   granted qualified immunity.

24   I.  The First Amended Complaint

25          Plaintiff alleges violations of his Eighth, Ninth and Fourteenth Amendment rights based

26   on forced tuberculosis ("TB") skin tests, citing Mills v. Rogers, 457 U.S. 291 (1982), and Rogers

27   _____

28   [1]  Defendants Fitter and Ha and plaintiff's putative state law claims were dismissed based on
     plaintiff's voluntary requests.  (ECF Nos. 52, 55, 62.)

                                                  1

1   v. Okin, 478 F. Supp. 1342 (1979).  Plaintiff alleges that on an unidentified date he was forced to

2   have a TB skin test, which he claims caused a "resurgence" of his skin cancer on May 3, 2016.

3   (ECF No. 16 at 3.)  He cites California Code of Regulations, Title 15 § 3351(e).  (ECF No. 16 at

4   4.)  Plaintiff also claims that defendants deprived plaintiff of his right to refuse TB test injections

5   which should not be administered to persons who previously experienced a severe reaction.  (ECF

6   No. 16 at 7, citing pgs. 16, 27, 31, & 57-59.)

7           Plaintiff alleges that defendant Allison, the Director of the Division of Adult Institutions,

8   Sacramento, California, is directly responsible for enforcing the annual tuberculosis skin test, and

9   requiring that inmates who refuse the test will receive a CDCR-115 rule violation.  Plaintiff refers

10  to and provides the 2015 notice requiring annual inmate TB testing, which states that California

11  State Law requires that every inmate be tested yearly for TB.  (ECF No. 16 at 4, 14.)  The notice

12  states that inmates who refuse the test "will be evaluated for forced testing, which could result in

13  disciplinary action."  (ECF No. 16 at 14.)

14          Further, plaintiff alleges that J. Lewis, Deputy Director, is in charge of Policy & Risk

15  Management Services for the California Correctional Health Care Services, and personally

16  participates in forcing prisoners to receive injections of Aplisol and Tubersol chemicals.  (ECF

17  No. 16 at 3.)  Plaintiff alleges such chemicals are described as carcinogens, and accompanied by

18  certain high risk warnings.  (ECF No. 16 at 3, 25-34.)

19          Plaintiff seeks money damages.[2]  (ECF No. 16 at 12.)

20  II.  Defendants' Motion to Strike

21          Plaintiff filed multiple documents in response to defendants' motion to dismiss and reply.

22  On October 30, 2019, plaintiff was granted an extension of time to file one opposition to the

23  motion to dismiss.  (ECF No. 61.)  On November 12, 2019, plaintiff filed his opposition.[3]  (ECF

24  No. 64.)  On November 20, 2019, defendants filed a motion to strike plaintiff's subsequently-filed

25  _____

26  [2]  Plaintiff also sought appointment of counsel, which was denied on March 6, 2020.  (ECF No.
    72.)

27
28  [3]  Plaintiff's opposition was signed November 5, 2019, and specifically references the court's
    order (ECF No. 61) in the title of his opposition.  (ECF No. 64.)

1    addendum and supporting authority.  (ECF Nos. 65 & 66.)  Plaintiff filed objections to the motion

2    to strike based on his status as a prisoner, but then further argued the merits of his opposition to

3    the motion, and included facts and exhibits concerning medical treatment at R.J. Donovan for an

4    unrelated medical condition concerning his eye.  (ECF No. 68.)

5        The Local Rules do not authorize the routine filing of a sur-reply.  Nevertheless, a district

6    court may allow a sur-reply "where a valid reason for such additional briefing exists, such as

7    where the movant raises new arguments in its reply brief."  Hill v. England, 2005 WL 3031136, at

8    *1 (E.D. Cal. 2005); accord Norwood v. Byers, 2013 WL 3330643, at *3 (E.D. Cal. 2013)

9    (granting the motion to strike the sur-reply because "defendants did not raise new arguments in

10    their reply that necessitated additional argument from plaintiff, plaintiff did not seek leave to file

11    a sur-reply before actually filing it, and the arguments in the sur-reply do not alter the analysis

12    below"), adopted, 2013 WL 5156572 (E.D. Cal. 2013).  In the present case, defendants opted not

13    to file a reply.  Plaintiff did not seek leave to file a sur-reply, and his reiterated arguments and

14    supplemental authorities do not alter the court's analysis.  For these reasons, defendants' motion

15    to strike is granted, and the court strikes plaintiff's filings (ECF Nos. 65 and 66).

16    III.  Defendants' Request for Judicial Notice

17        Defendants request the court take judicial notice of California Penal Code §§ 7570, 7572,

18    7573, and 7574, and California Code of Regulations, Title 15 § 3351, all governing mandatory

19    TB testing.  (ECF No. 56-2.)  Plaintiff did not address defendants' request.

20        The court may judicially notice a fact not subject to reasonable dispute because it "(1) is

21    generally known within the trial court's territorial jurisdiction; or (2) can be accurately and

22    readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R.

23    Evid. 201(b).  Judicial notice is proper for public records whose accuracy is not in dispute.  See

24    Anderson v. Holder, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012) ("[A court] may take judicial notice

25    of records and reports of administrative bodies." (internal quotation marks omitted)); United

26    States v. Ritchie, 342 F.3d 903, 909 (9th Cir. 2003) (same).  In addition, courts may take judicial

27    notice of state statutes and their legislative history.  See Anderson, 673 F.3d at 1094 n.1

28    ("Legislative history is properly a subject of judicial notice."); Chaker v. Crogan, 428 F.3d 1215,

1   1223 n.8 (9th Cir. 2005) (taking judicial notice of the legislative history of California Penal Code

2   § 148.6).

3          The Court finds the requested judicial notice is appropriate.  The state statutes and

4   regulation provided by defendants contain facts that can be readily determined from accurate

5   sources.  Moreover, in his operative pleading, plaintiff referred to and provided the notice that

6   California state law requires the administration of TB tests, and that forced testing may be

7   imposed.  (ECF No. 16 at 14.)  Plaintiff also cites to California Code of Regulations, Title 15

8   § 3351.  (ECF No. 16 at 4.)

9          Accordingly, the Court takes judicial notice of such documents, "without converting the

10  motion to dismiss into a motion for summary judgment."  Ritchie, 342 F.3d at 908 (citations

11  omitted).

12  IV.  Motion to Dismiss

13         In screening plaintiff's pleading, the undersigned found that plaintiff stated potentially

14  cognizable Fourth and Fourteenth Amendment claims based on his allegations that he was

15  involuntarily forced to submit to a TB skin test.  (ECF No. 16 at 3.)

16         A.  Legal Standards Governing Motion to Dismiss

17         Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for

18  "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In

19  considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court

20  must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89

21  (2007), and construe the pleading in the light most favorable to the plaintiff.  Jenkins v.

22  McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir.

23  1999).  Still, to survive dismissal for failure to state a claim, a pro se complaint must contain more

24  than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a

25  cause of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007).  In other words,

26  "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

27  statements do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Furthermore, a claim

28  upon which the court can grant relief must have facial plausibility.  Twombly, 550 U.S. at 570.

4

1   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

2   draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556

3   U.S. at 678.

4       "As a general rule, 'a district court may not consider any material beyond the pleadings in

5   ruling on a Rule 12(b)(6) motion.'" Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir.

6   2001) (quoting Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994)).  Otherwise, the motion is

7   treated as one for summary judgment.  Id.  There are exceptions for material which is properly

8   submitted as part of the complaint and "matters of public record" which may be judicially

9   noticed.  Id. at 688-89.  "If the documents are not physically attached to the complaint, they may

10  be considered if the documents' 'authenticity . . . is not contested' and 'the plaintiff's complaint

11  necessarily relies' on them."  Id. at 688(quoting Parrino v. FHD, Inc., 146 F.3d 699, 705-06 (9th

12  Cir. 1998).

13      A motion to dismiss for failure to state a claim should not be granted unless it appears

14  beyond doubt that the plaintiff can prove no set of facts in support of his claims which would

15  entitle him to relief.  Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984).  In general, pro se

16  pleadings are held to a less stringent standard than those drafted by lawyers.  Haines v. Kerner,

17  404 U.S. 519, 520 (1972).  The court has an obligation to construe such pleadings liberally.  Bretz

18  v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).  However, the court's liberal

19  interpretation of a pro se complaint may not supply essential elements of the claim that were not

20  pled.  Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

21      B.  The Parties' Positions

22          1.  Defendants' Motion

23      Defendants contend that plaintiff fails to state a claim for administration of a TB skin test.

24  First, plaintiff fails to identify the particular administration of the TB test he challenges.  He does

25  not allege any facts regarding when or how he was forcibly subjected to a test he allegedly

26  refused, or how the defendants participated in the administration of such test, including the April

27  29, 2016 test mentioned in the appended exhibits.  Plaintiff does not allege how any testing

28  mentioned in his pleading or its attachments was "unreasonable or inconsistent with the

1   penological goal of protecting the health and safety of inmates and staff." (ECF No. 56-1 at 3,

2   citing <u>Washington v. Cambra</u>, No. C 95-3216 TEH, 1996 WL 507313, at *4 (N.D. Cal. Aug. 27,

3   1996.)

4          Second, defendants argue that plaintiff's unexplained reliance on California Code of

5   Regulations ("CCR") section 3351(e) is unavailing because it expressly exempts TB tests, and

6   California Penal Code section 7574 permits the involuntary testing of an inmate. <u>Id.</u> Also, in

7   <u>Rhinehart</u>, the district court evaluated medical "treatment" under a similar section, CCR section

8   3355, and found that section 3355 did not apply "because the TB test alone was not intended as a

9   <u>treatment</u> or medication, but rather was intended to "prevent the spread of an infectious disease."

10  <u>Rhinehart v. Gomez</u>, No. 93-cv-3747, 1995 WL 364339, at *4 (N.D. Cal. June 8, 1995). Plaintiff

11  fails to show how the administration of the TB test was unreasonable, and defendants contend the

12  mere administration of the test, standing alone, is insufficient to state a claim.

13         Further, defendants argue they are entitled to qualified immunity because there is no

14  established law finding that the involuntary administration of a TB test violates an individual's

15  due process rights. Tuberculosis "is a highly contagious disease in prison populations," and

16  protecting inmates' health and preventing the spread of disease in prison are legitimate

17  penological goals. <u>Funtanilla v. Campbell</u>, 95 F.3d 1157 (9th Cir. 1996). California Penal Code

18  Section 7574 has provided for mandatory TB testing since at least 2012, and both defendants

19  acted in compliance with § 7574 by mandating annual TB testing, and would not have reasonably

20  believed or understood such conduct to be unlawful. Similarly, defendants are entitled to

21  qualified immunity from plaintiff's Fourth Amendment claim because there is no binding case

22  law finding a Fourth Amendment violation for the general administration of a TB skin test.

23         Finally, defendants ask the court to disregard plaintiff's claims that defendant Lewis failed

24  to provide plaintiff a waiver to comply with a TB test because plaintiff fails to identify the

25  particular TB test at issue, and plaintiff's exhibits demonstrate he was aware of the change in

26  policy in May 2016 that permits inmates to opt out of TB testing, undercutting any claim by

27  plaintiff that he was forced to submit to a TB test after May of 2016. (ECF No. 56-1 at 7.)

28  ////

1

                    2.  <u>Plaintiff's Opposition</u>

2

        On November 12, 2019, plaintiff filed a four-sentence opposition signed under penalty of

3

perjury.  Plaintiff claims that "[t]he California Dept. of Corrections and Rehabilitation is liable for

4

the 'cancer causation' created via state personnel and contracted physicians," and is "fully

5

responsible for monetary damages in civil jury trial."  (ECF No. 64 at 1.)  Plaintiff claims this

6

makes "qualified immunity inapplicable issue for" defendants.  (<u>Id.</u>)

7

        C.  <u>State Laws and Regulations Governing TB Testing</u>

8

        Tuberculosis testing in California prisons is required under California Penal Code § 7570:

9

10

11

> [T]he Legislature hereby finds and declares that tuberculosis is a serious contagious disease.  It is vital to the health and safety of inmates, employees, and the public at large, to conduct appropriate examinations, testing, and treatment in order to control the spread of tuberculosis in California's institutions.

12

<u>Id.</u> (ECF No. 56-2 at 5.)  "The chief of medical services, or his or her designee" is tasked with

13

"full powers" to investigate incidents of TB and to "ascertain the source" of such infection.  Cal.

14

Penal Code § 7572.  (ECF No. 56-2 at 6.)  The chief medical officer of a state prison is authorized

15

to administer TB tests "on all inmates" "at least annually."  Cal. Penal Code § 7573(b).  (ECF No.

16

56-2 at 7.)  Moreover, prison staff may test inmates against their will and may impose

17

disciplinary action against an inmate who refuses to be tested.  Cal. Penal Code § 7574.  (ECF

18

No. 56-2 at 8.)  California Code of Regulations, Title 15 § 3351(e) confirms that involuntary

19

testing for TB is permitted:

20

21

22

23

24

> Health care treatment, including medication, shall not be forced over the objections of a mentally competent inmate; the guardian of a mentally incompetent inmate; or a responsible relative of a minor inmate, except in an emergency, or as required to complete the examination or tests for tuberculosis infection, or to implement the treatment for tuberculosis disease, or unless the provisions of Probate Code Sections 3200 et seq. or the procedures set forth in Penal Code (PC) Section 2602 are followed.

25

Cal. Code Regs. tit. 15, § 3351(e).  (ECF No. 56-2 at 11.)

26

////

27

////

28

////

1  V.  <u>Qualified Immunity</u>

2      A.  <u>Legal Standards</u>

3          Qualified immunity applies when an official's conduct does not violate clearly established

4  statutory or constitutional rights of which a reasonable person would have known.  <u>White v.</u>

5  <u>Pauly</u>, 137 S. Ct. 548, 551 (2017).  Officers are entitled to qualified immunity under § 1983

6  unless (1) the officers violate a federal statutory or constitutional right, and (2) the unlawfulness

7  of their conduct was "clearly established at the time."  <u>District of Columbia v. Wesby</u>, 138 S. Ct.

8  577, 589 (2018); <u>White</u>, 137 S. Ct. at 551.  "Clearly established" means that the statutory or

9  constitutional question was "beyond debate," such that every reasonable official would

10  understand that what he is doing is unlawful.  <u>See</u> <u>Wesby</u>, 138 S. Ct. at 589; <u>Vos v. City of</u>

11  <u>Newport Beach</u>, 892 F.3d 1024, 1035 (9th Cir. 2018).  This is a "demanding standard" that

12  protects "all but the plainly incompetent or those who knowingly violate the law."  <u>Wesby</u>, 138 S.

13  Ct. at 589 (citing <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986)).  To be "clearly established," a rule

14  must be dictated by controlling authority or by a robust consensus of cases of persuasive

15  authority.  <u>Wesby</u>, 138 S. Ct. at 589; <u>see also</u> <u>Perez v. City of Roseville</u>, 882 F.3d 843, 856-57

16  (9th Cir. 2018) (noting that Ninth Circuit precedent is sufficient to meet the "clearly established"

17  prong of qualified immunity); <u>Hamby v. Hammond</u>, 821 F.3d 1085, 1095 (9th Cir. 2016)

18  ("[D]istrict court decisions -- unlike those from the courts of appeals -- do not necessarily settle

19  constitutional standards or prevent repeated claims of qualified immunity.").  In examining

20  whether a rule/right is clearly established, courts are to define the law to a "high degree of

21  specificity," and not "at a high level of generality."  <u>Wesby</u>, 138 S. Ct. at 590; <u>Kisela v. Hughes</u>,

22  138 S. Ct. 1148, 1152 (2018).  The key question is "whether the violative nature of particular

23  conduct is clearly established" in the specific context of the case.  <u>Vos</u>, 892 F.3d at 1035 (quoting

24  <u>Mullenix v. Luna</u>, 136 S. Ct. 305, 308 (2015)).  Although it is not necessary to identify a case that

25  is "directly on point," generally the plaintiff needs to identify where an officer acting under

26  similar circumstances was held to have violated federal right.  <u>Wesby</u>, 138 U.S. at 577; <u>Vos</u>, 892

27  F.3d at 1035; <u>Felarca v. Birgeneau</u>, 891 F.3d 809, 822 (9th Cir. 2018); <u>Shafer v. City of Santa</u>

28  <u>Barbara</u>, 868 F.3d 1110, 1118 (9th Cir. 2017).

8

1  In a § 1983 action, plaintiffs bear the burden of showing defendants violated their clearly

2  established rights.  Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir. 1991); see also

3  LSO, Ltd. v. Stroh, 205 F.3d 1146, 1157 (9th Cir. 2000) ("Once the defense of qualified

4  immunity is raised by the defendant, the plaintiff bears the burden of showing that the rights

5  allegedly violated were 'clearly established.'" (citation omitted)).  "If that burden is satisfied, the

6  defendant must prove that his conduct was 'reasonable.'"  LSO, Ltd., 205 F.3d at 1157.

7  B.  Discussion

8  Defendants invoke qualified immunity on both plaintiff's Fourth and Fourteenth

9  Amendment claims.  In opposition, plaintiff cites no authority demonstrating that defendants are

10  not entitled to qualified immunity on either claim.  (ECF No. 64.)  Plaintiff does not argue that

11  there was no legitimate penological purpose for the TB skin tests he was required to have.  Thus,

12  plaintiff fails to bear his burden to show that the rights plaintiff alleges were violated were clearly

13  established.

14  "[T]uberculosis is particularly dangerous in a prison environment, where overcrowding

15  and poor ventilation can hasten the spread of this airborne disease."  See Madrid v. Gomez, 889

16  F. Supp. 1146, 1205 (N.D. Cal. 1995).  As early as 1993, the State of California has recognized

17  that tuberculosis is a serious contagious disease, which presents a serious risk to inmates' health.

18  Cal. Penal Code Section 7570 (effective Oct. 8, 1993).  The notice to inmates provided by

19  plaintiff confirms that the TB skin test is required under California state law, and explains the

20  serious nature of TB and why the TB skin test is important.  (ECF No. 16 at 14.)  Such legislative

21  action demonstrates that the requirement that prison inmates be tested for TB on an annual basis

22  is a legitimate penological goal in order to avoid the spread of a contagious disease and the

23  serious risk to the health of other inmates and prison staff.

24  No party has cited, and the undersigned has not found, a published Ninth Circuit or

25  Supreme Court case addressing the mandatory or forced administration of TB tests on prison

26  inmates.  However, in unreported decisions, two California district courts have upheld the

27  punishment of inmates who refused the TB test.  Washington v. Cambra, 1996 WL 507313 at 2-4;

28  Rhinehart, 1995 WL 364339 at *4 (Washington v. Harper justifies prison policy of involuntary

9

1   testing and treatment for TB).  Other courts outside the Ninth Circuit have similarly upheld

2   mandatory and forced TB testing of prisoners.  See Mack v. Campbell, 1991 WL 243569 (6th Cir.

3   1991) (administrative segregation for refusing TB screening test does not violate due process);

4   Karolis v. New Jersey Dept. of Corr., 935 F. Supp. 523, 527-28 (D. N.J. 1996) (involuntary

5   administration of TB test to prisoner upheld against challenge under Religious Freedom

6   Restoration Act because there is a compelling interest in stopping the spread of TB in a prison);

7   Hasenmeier-McCarthy v. Rose, 986 F. Supp. 464 (S.D. Ohio Jan. 7, 1998) (mandatory TB testing

8   accomplished legitimate penological interest of protecting other inmates and staff from infectious

9   diseases); Dunn v. Zenk, 2007 WL 2904170, at *3 (N.D. Ga. Oct. 1, 2007) ("states have a

10  legitimate penological interest in controlling the spread of tuberculosis such that involuntary

11  administration of a test for the disease does not offend the Constitution," finding the former

12  inmate's claim that he was forced to take the TB test against his will failed to state a cognizable

13  civil rights claim.).

14          In Rhinehart, the plaintiff, a practicing Muslim, argued in his underlying administrative

15  appeal that his religious beliefs prevented him from submitting to mandatory TB testing, but in

16  his moving papers argued that the TB testing violates due process by "unjustified intrusions [sic]

17  on personal security."  Id. at *1.  Rhinehart was physically compelled by prison staff to submit to

18  TB testing during a cell extraction.  The district court relied on Harper, 494 U.S. at 210, to find

19  that the defendants had a "right to administer involuntary TB tests because the tests can prevent

20  harm both to the prisoner and to others," and such legitimate interest outweighed Rhinehart's

21  interests.  Rhinehart, 1995 WL 364339 at *3.

22          In Cambra, two inmates refused to submit to TB testing because they had been tested

23  twelve weeks prior.  Prison staff forcibly extracted the inmates from their cell using pepper spray

24  so the inmates could be involuntarily tested for TB.  The district court stated that, absent a

25  showing that TB testing is reasonably related to a legitimate penological goal, TB testing may

26  violate a prisoner's constitutional rights under the Fourth or Fourteenth Amendments, but

27  concluded that the practice of testing inmates when they arrived at the prison, and again twelve

28  weeks later to determine whether the inmate had been exposed to TB, was reasonable and

1   constitutional.  <u>Cambra</u>, 1996 WL 507313, at *3.

2          Here, plaintiff does not allege that either defendant physically forced plaintiff to take TB

3   tests, or that he was otherwise punished for any alleged refusal to be tested.  Rather, plaintiff

4   argues that defendants required or enforced the TB tests, and defendant Lewis refused to exempt

5   plaintiff from the April 29, 2016 TB testing.  In determining whether defendants are entitled to

6   qualified immunity, the question is whether it would have been clear to a reasonable Director or

7   Deputy Director knowing what such defendants knew, viewed in the light most favorable to

8   plaintiff, that requiring or enforcing mandatory TB testing as required under California state law

9   posed such a substantial risk of serious harm that it would be constitutionally impermissible.

10          Plaintiff's amended complaint and its attachments, viewed in the light most favorable to

11   plaintiff, confirms that defendants were acting in compliance with California state statutes.

12   Defendants were obligated to test plaintiff for TB under California law, and had authority to

13   impose TB tests on prisoners involuntarily.  Cal. Penal Code Sections 7570, 7574.  Such code

14   sections have not been found to be unconstitutional.

15          Moreover, at the time of this incident, it was not clearly established that prison

16   administrators tasked with requiring or enforcing the administration of annual mandatory TB

17   testing would violate an inmate's constitutional rights by doing so.  Plaintiff provides no legal

18   authority demonstrating defendants violated any established constitutional right.  Plaintiff cites no

19   legal authority showing that it is beyond debate that enforcing the annual mandatory TB testing

20   for prison inmates, required under state law, is not performed for a legitimate penological goal, or

21   that defendants would not have reasonably believed or understood their conduct in enforcing the

22   requirement would be lawful.  Indeed, he provided no legal authority in opposition to defendants'

23   motion.[4]  The undersigned finds that a reasonable Director or Deputy Director in defendants'

24   _____

25   [4]  In his pleading, plaintiff relies on <u>Mills v. Rogers</u>, 457 U.S. 291 (1982), and <u>Rogers v. Okin</u>,
     478 F. Supp. 1342 (D. Mass. 1979).  In <u>Mills</u>, the Court addressed the involuntary administration

26   of antipsychotic medications for involuntarily committed mental health patients, and therefore is
     distinguishable from the instant case.  <u>Id.</u>  <u>Rogers</u>, an out-of-circuit district court case, addressed

27   whether a committed, mentally ill patient could, without a judicial proceeding, be forced to take
     mind-altering drugs in a non-emergency situation, and thus is distinguishable and also has no

28   persuasive value.  <u>Rogers</u>, 478 F. Supp. 1342, <u>aff'd in part</u>, <u>rev'd in part and remanded</u>, 634 F.2d

1  positions could have believed that requiring or enforcing a TB test on plaintiff did not offend the

2  Constitution, under either the Fourth or the Fourteenth Amendments.

3    Therefore, the undersigned recommends that defendants be granted qualified immunity

4  and this action be dismissed.

5  VI.  <u>Conclusion</u>

6    For the foregoing reasons, IT IS HEREBY ORDERED that:

7    1.  Defendants' motion (ECF No. 67) to strike is granted;

8    2.  Plaintiff's filings (ECF Nos. 65, 66) are stricken;

9    3.  Defendants' request for judicial notice (ECF No. 56) is granted.

10    Further, IT IS RECOMMENDED that:

11    1.  Defendants' motion to dismiss (ECF No. 56) be granted in part;

12    2.  Defendants be granted qualified immunity; and

13    3.  This action be dismissed without prejudice.

14    These findings and recommendations are submitted to the United States District Judge

15  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

16  after being served with these findings and recommendations, petitioner any party may file written

17  objections with the court and serve a copy on all parties.  Such a document should be captioned

18  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

19  objections shall be filed and served within fourteen days after service of the objections.  The

20  parties are advised that failure to file objections within the specified time may waive the right to

21  appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

22  Dated:  July 30, 2020

23

24  KENDALL J. NEWMAN
  UNITED STATES MAGISTRATE JUDGE

25  /bowe0981.mtd.12b6

26

27  650 (1st Cir. 1980), <u>vacated and remanded sub nom.</u>, <u>Mills v. Rogers</u>, 457 U.S. 291 (1982),
<u>certified questions answered sub</u> <u>nom.</u>, <u>Rogers v. Commissioner of Mental Health</u>, 390 Mass.

28  489, 458 N.E.2d 308 (1983), <u>remanded</u>, <u>Rogers v. Okin</u>, 738 F.2d 1 (1st Cir. 1984).